[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 521 
It may be assumed, I think, that at the time of the commencement of this suit the plaintiffs were in possession of the premises as tenants in common with the mortgagors of the defendant. This fact is not directly averred in the complaint, but it would seem to follow as a legal deduction from the facts that are averred therein. It is alleged in the complaint that the ancestor under whom the plaintiffs claim to hold by inheritance, died seized in fee of the premises, leaving the plaintiffs, Chapman S. Ward and one other child, heirs-at-law, and that the mortgagors, Chapman S. Ward and the widow, at the time of the execution of the mortgage, although in the exclusive occupation, claimed no interest, nor did they at the commencement of the suit claim any interest in more than an undivided one-half of the land thus mortgaged. There is nothing, therefore, in these allegations to overthrow the presumption that all the heirs remained, at least in contemplation of law, in possession as tenants in common up to the time of the commencement of the suit.
Assuming this to be the relation which the owners of the premises sustained to each other at the time of the execution of the mortgage, we come to the principal question in the case, to wit, whether the mortgage purporting to be executed upon the whole premises created such a cloud upon the title of the plaintiffs as to call for the interposition of the equitable powers of the court to remove it. I do *Page 522 
not conceive that the proceedings to foreclose this mortgage can at all affect the question. If the mortgage itself creates no cloud upon the title of the plaintiffs, the proceedings to foreclose the equity of redemption have added nothing to it.
The rule is well settled that when a defect appears upon the face of the record through which the opposite party can alone claim title, there is not such a cloud upon the title as to call for the exercise of the equitable powers of the court to remove it. (Cox v. Clift, 2 Comst., 118; Piersoll v. Elliott,
6 Peters, 95.) But when such claim appears to be valid upon the face of the record, and the defect can only be made to appear by extrinsic evidence, particularly if that evidence depends upon oral testimony to establish it, it presents a case for invoking the aid of a court of equity to remove it as a cloud upon the title. The case of fraud in procuring a deed to be executed which apparently conveys the title, or the case of the sale of land by a sheriff and the execution of a deed to the purchaser after redemption, or a sale upon a paid judgment, is a familiar illustration of a case of the latter kind.
The question then is, to which of these two classes does the case at bar belong. If the ancestor in this case had executed a deed of conveyance to his children of the premises, to be held by them equally as tenants in common, the defect in the defendant's claim to the plaintiffs' portion of the premises would be apparent upon the record, and no one would dispute but that it belonged to the class first above suggested. But I am unable to distinguish such a case from the one before us. It is true the deed, as a mere instrument, is well enough, and no flaw appears upon it, taking it separately from the chain of title of which it forms a link. But looking at it thus, it of course shows no title at all, and would be deemed perfectly harmless, affecting in no manner the title of the plaintiffs. It is only as a link in a chain of title that it can have any effect. It will therefore become necessary for any person claiming under this deed *Page 523 
to show the relation which the grantors held to the ancestor who died seized of the premises; and the moment that is shown, the deed, instead of constituting a conveyance of the whole premises, constitutes a conveyance of one undivided half only. I know of no better method of illustrating this than by assuming that the foreclosure is completed by a sale, and that the purchaser brings an action to recover possession. Proof of title in the ancestor, and of the mortgage with the requisite proceedings to foreclose, would show no title at all. There would be a palpable defect in the record, growing out of the want of proof of any title in the mortgagors. It would be manifestly necessary for the claimant to supply this defect. Without evidence to supply it, no one, I think, would contend that there was any cloud upon the title sufficient to call for the aid of a court of equity. A court of law would not hesitate to nonsuit upon such proof of title. But to supply this defect it would be necessary for the claimant to show the relation which the mortgagors held to the ancestor; and then it would appear that they only owned an undivided half of the premises, although they had assumed to mortgage the whole. As soon, therefore, as this relation should be established, the defect in the title of the claimant would be manifest upon the record itself, as clearly as it would if the heirs had claimed under a recorded conveyance to them from the ancestor. It seems to me, therefore, to present plainly a case in which the defect in the claim appears upon the face of the record.
It seems to have been assumed, at general term in the court below, that the mortgagors were in possession at the time of executing the mortgage; and the decision of the case seems to have been based somewhat upon that assumption. I have shown that this assumption is erroneous, but if it is not I cannot perceive how that strengthens the plaintiffs' case. The complaint expressly avers that the mortgagors, at the time of executing the mortgage and up to the commencement of this suit, made no claim of title to any more *Page 524 
than their actual interest in the premises. Possession without claim of title is not a very important element in the deduction of title. There is no statute of limitation to the right of entry as against a squatter of that kind.
But if we assume that the mortgagors were at the time of executing the mortgage, and now are, in the exclusive possession of the premises, holding adversely, there would still be no necessity of resorting to a court of equity for relief. The legal action to recover the possession would afford ample relief. It is only parties in possession, or who hold some future estate which gives them no right to immediate possession, upon whom any necessity rests of resorting to a court of equity for aid to remove a cloud from their title. But when they have the right to immediate possession, the common law action of ejectment, as it was formerly called, with a trial by jury, is the proper remedy.
It was suggested upon the argument, in behalf of the plaintiffs, that the purchaser upon the mortgage sale might make the mortgage title the basis of an adverse possession, which, in time, might bar the plaintiffs' right. This point seems to me to be based upon some confusion of ideas. If the plaintiffs are now in possession, I cannot comprehend how any adverse possession can be set up against them so long as they continue in possession. And if they are out of possession, the fear that they will neglect, themselves, to assert their title for twenty years, until their right of entry shall be barred by the statute of limitations, is a species of quia timet for which the principles of equity jurisdiction suggest no remedy. The fear by a party of his own negligence affords no ground of relief in a court of equity; at least, I have found no precedent for such a case.
In fine, I think the cases of Cox v. Clift and Piersoll
v. Elliott (supra) were much stronger than the case at bar for the interposition of a court of equity. *Page 525 
Upon the whole, therefore, I think the judgment of the general term should be reversed, and that of the special term affirmed, with costs of appeal to the general term.