## BEACH *vs.* COOKE, administratrix. &c.

A complaint was filed against a mortgagee, by the plaintiff, in two capacities: 1. As the owner of the mortgaged premises, to obtain a decree declaring the mortgage satisfied, and removing the apparent incumbrance from the land; or, if the mortgage was not entirely paid, to apply upon the same so much of certain claims against the mortgagee of which he was assignee as would suffice to extinguish the same; 2. As assignee of those claims, to obtain a judgment against the defendant for the amount thereof, or so much of such amount as should remain after satisfying the mortgage. There was also a prayer for general relief, but no specific prayer for leave to *redeem* the mortgage. *Held* that as the facts embraced in the pleadings and proved on the trial presented a fit case for that relief, and as the claim for such relief was made at the close of the case, and was susceptible of being granted, under the allegations and proofs and the prayer for general relief, the decree should have provided for it, by declaring the amount due upon the mortgage, and that upon payment thereof by the plaintiff the mortgage should be canceled.

Beach *v.* Cooke.

THIS action was commenced in 1853, to obtain the decree or judgment of this court, among other things, that a mortgage given by Ephraim Beach, on the 4th day of January, 1836, to one Francis J. Marvin, to secure originally $52,000 upon lands in the town of Catskill, in the county of Greene, was fully paid, and should be discharged of record. The complaint alleges that prior to the 4th of January, 1836, the original defendant, Thomas B. Cooke, and Ephraim Beach, Amos Cornwell, John S. Platt, Newton Hayés, Peter T. Mesick, and others, were about to form a "land association," for the purpose of purchasing lands near the village of Catskill, along the line of the Catskill and Canajoharie rail road, the capital of the said association not to exceed $200,000. That subsequently and during the year 1836 the association was formed. That by arrangement between the associates, lands were purchased for the association and conveyances taken in the name of any member who chose to take the same, and that a large amount of real estate was so purchased. That on the 4th of January, 1836, the original defendants, Thomas B. Cooke, Ephraim Beach, and others, members of the said association, purchased a large amount of real estate, near Catskill, for said association. That by agreement the conveyance of the lands purchased of Marvin was made to Ephraim Beach, and that in payment for said lands, (and $2000 of bridge stock,) a bond was given to Marvin in the penal sum of $100,000, conditioned to pay $52,000 and interest, signed by T. B. Cooke, E. Beach, Platt, Hayes, Cornwell and Mesick, and Beach gave his mortgage on the premises so purchased. It is also alleged in the complaint that prior to the 20th of September, 1839, the mortgage was fully paid by the associates, and that about that day Thomas B. Cooke procured the said bond and mortgage to be assigned to him by the holder thereof, and now claims to hold the same as a demand against Beach, and as a lien on the lands embraced in the mortgage. It is then further alleged that on the 13th of July, 1853, and before

the commencement of this suit, Ephraim Beach, the mortgagor, conveyed to the plaintiff in this action all the lands described in the said mortgage. It is also alleged that Cooke and E. Beach had large private transactions with each other, and that Cooke on account thereof was largely indebted to E. Beach, and that E. Beach not only conveyed the mortgaged premises to the plaintiff, but also assigned him the said claims and demands, which it is claimed should be applied in payment of the said mortgage, so far as necessary for that purpose. It is also alleged that before the conveyance of the lands to the plaintiff, and after Cooke obtained said mortgage, Ephraim Beach paid the said mortgage to Cooke. It is then demanded that the mortgage should be declared paid and canceled of record, and that there should be an accounting of all dealings between defendant and E. Beach; that so much of the plaintiff's demands as was necessary for that purpose should be applied to the payment or reduction of said bond and mortgage, and the defendant Cooke be adjudged to pay the plaintiff any balance due, with costs, and for general relief. The answer denies the whole complaint, and further alleges that Cooke signed the bond to Marvin as surety for E. Beach, and that on the 20th of September, 1839, Cooke paid for Beach $10,000 on the bond and mortgage to Marvin, and that for that amount Marvin assigned the bond and mortgage to Cooke, and that at the time Beach admitted that Cooke had signed the bond as surety, he requested Cooke to advance the $10,000 to Marvin, and consented that Marvin should assign the bond and mortgage to Cooke as security. The answer then alleges that Beach was largely indebted to Cooke, and also sets up the statute of limitations. Thomas B. Cooke having died, the action was revived against Maria R. Cooke, his administratrix. The cause was referred to John C. Newkirk, Esq., referee, and tried before him, and he found the following facts: *First.* The purchase by Beach of Marvin on the 4th of January, 1836, of the real estate in question (and bridge stock) and

Beach *v.* Cooke.

the conveyance of the same to Beach by deed bearing date on that day. *Second.* That to secure the payment of the purchase money, Beach, with T. B. Cooke and others, gave Marvin their bond in the penal sum of $100,000, conditioned to pay $52,000 and interest, in installments. *Third.* That further to secure the payment, Beach gave his mortgage on the premises, which is sought to be canceled. *Fourth.* That the bond given as aforesaid was signed by Cooke, Platt, Hayes, Cornwall and Mesick, as the sureties of Beach. *Fifth.* That from the time of the execution of the mortgage until the hearing of the cause before the referee, E. Beach resided on a portion of the mortgaged premises, and was during the whole of the time in the receipt of the rents and profits of the whole. *Sixth.* That on the 15th of June, 1853, E. Beach conveyed the whole of the real estate described in the mortgage by warranty deed to the plaintiff in this action. *Seventh.* That the bond and mortgage were reduced by payments made at different times, so that on the 20th of September, 1839, there was due thereon $24,625.92. *Eighth.* On that day Ephraim Beach paid the balance due on said mortgage by cash and securities, except $10.000. The securities turned out by him amounted to $10,000, and among them was a mortgage on real estate in Newark, N. J. given by Nathan Bowles for $5000, and one for $2000, and that on that day Thomas B. Cooke, at the request of Beach, advanced and paid for Beach on said mortgage to Marvin, $10,000, the residue of the amount due on the mortgage, and Cooke took as security for such advance an assignment of the bond and mortgage for $10,000 from Marvin. *Ninth.* That the assignment by Marvin to Cooke was given with the knowledge and consent of Beach. *Tenth.* That the two mortgages given by Bowles, mentioned in the assignment, were paid before this suit was commenced. *Eleventh.* That on the 8th day of January, 1840, Beach delivered to Cooke seven certificates of Canajoharie and Catskill rail road state stock for $1000 each, with a power of attorney to transfer the

same, and on the 25th of April, 1840, also delivered three other certificates for $1000 each, with a like power of attorney to transfer the same. That these certificates were delivered to Cooke, under an arrangement that the proceeds when sold were to be applied as a payment on the $10,000 paid by Cooke to Marvin, and as security for which he held the assignment of said bond and mortgage. *Twelfth.* That Cooke sold these stocks on the 5th of June, 1843, and realized from the same over the expenses of sale, $11,337.50. *Thirteenth.* That no payments other than the proceeds of said stock have been made on the $10,000 advanced by Cooke. *Fourteenth.* That on the 5th of June, 1843, there was due to Cooke on the $10,000 advanced, $12,597.34, and deducting therefrom the proceeds of the stock, $11,337.50, there remained a balance in favor of Cooke of $1259.84, which with interest from June 5th, 1843, is still due and unpaid. *Fifteenth.* That Cooke, Beach, Platt, Cornwell and others, by articles of association on the 27th of June, 1836, formed a land association for the purchase and sale of real estate, adjacent to the village of Catskill. That it was the intention of the parties that the real estate purchased by Beach of Marvin and covered by the mortgage should be taken by the association and form a part of their lands, but the same were never conveyed to or belonged to said association, and the title to the same remained in Ephraim Beach until he conveyed the same to the plaintiff, and he (E. Beach) always was in the occupation of the same, and received all the rents and profits thereof. *Sixteenth.* That after the formation of the said land association there were various dealings and money transactions between Beach and the association, which are unsettled. *Seventeenth.* That from 1836 to 1843, there were divers business and money transactions between Beach and Cooke to a large amount, which on the 13th of July, 1853, and at the time of the commencement of this action, were and still are unsettled. *Eighteenth.* That on the 13th of July, 1853, E. Beach sold

Beach *v.* Cooke.

and assigned to the plaintiff all his interest in and to the property of the land association, and all demands against the same or any member thereof, and also all accounts, claims and demands of every name and nature against Thomas B. Cooke. *Nineteenth.* The referee further states that he has not taken or stated the accounts between the said E. Beach and T. B. Cooke, or between Beach and the land association, *such purpose of this action being abandoned by the plaintiff.* That the investigation in regard to the said accounts was confined to the point of ascertaining what payments had been made on said bond and mortgage and moneys properly applicable thereto. The referee found the following conclusions of law: *First.* That Cooke by virtue of the assignment by Marvin on the 20th of September, 1839, held the bond and mortgage as a valid security against E. Beach and upon the mortgaged premises for $10,000 and interest. *Second.* That the same was not fully paid, and $1,259.84 with interest from June 5th, 1843, is still due thereon. *Third.* That the representative of Thomas B. Cooke, deceased, is entitled to hold the same as a security for the payment of the balance due thereon. *Fourth.* That the complaint be dismissed with costs. Before the final submission of the cause to the referee, and on the argument before him, the plaintiff's counsel claimed that the referee should make a decree declaring the mortgage paid and satisfied, and ordering the execution of a satisfaction thereof; or, if not wholly paid, then that the amount remaining due should be declared and satisfaction ordered on payment thereof.

The plaintiff excepted to all the conclusions of law found by the referee, and to the finding that the mortgage was not fully paid, and because the plaintiff was awarded no relief; and judgment having been entered upon the report of the referee, the plaintiff appealed therefrom to the general term of this court.

On the trial of the cause before the referee, various questions were made as to the inadmissibility of evidence, which,

so far as material to the disposition of the case, are considered in the opinion of the court.

*L. Tremain* for the plaintiff, (appellant.)

*J. H. Reynolds* for the defendant, (respondent.)

*By the Court,* HOGEBOOM, J.    The plaintiff in this action was the grantee of certain lands formerly owned by Ephraim Beach, upon which the original defendant, Thomas B. Cooke, claimed to hold a valid mortgage.    He was also the assignee of Ephraim Beach, of certain demands and choses in action, claimed to be held by Ephraim Beach against said Cooke; and he instituted this suit in both capacities : 1. As the owner of the real estate, to obtain a decree declaring the mortgage satisfied, and removing the apparent incumbrance from his land ; or, if said mortgage was not entirely paid, to apply upon the same so much of the claims of which he was assignee as would be sufficient to extinguish the same. 2. As assignee of the aforesaid demands, to obtain judgment against Cooke for the amount thereof, or so much of such amount as remained after satisfying the mortgage. There was also a prayer for general relief.    This is substantially the relief sought by the complaint ; and as a part of it, or incidental to it, the complaint prayed that (if the mortgage was found not to be wholly paid) the balance due upon the same be ascertained and determined by the judgment of the court, with a view to its application upon the demands assigned to the plaintiff ; and, also, that an accounting might be had of all dealings and transactions between Ephraim Beach and Thomas B. Cooke, to the end that the balance might be ascertained, and the defendant ordered to pay the same to the plaintiff.    The plaintiff does not seem to have anticipated the contingency that there might still be found a balance due upon the mortgage, after all payments and counter-claims had been credited thereon ; and therefore, the

complaint does not contain any specific prayer for permission to redeem the mortgage, which, nevertheless, would have been a perfectly proper prayer to have incorporated into the complaint, and consistent I think with the case made therein. And the question in this case is, whether without such relief being specifically sought, or apparently contemplated when the action was commenced, the plaintiff was nevertheless entitled to it at the close of the case, and had a right to demand it from the tribunal which disposed of the action; for I think it was in substance demanded before the questions in controversy were finally submitted to the referee. The case shows that on the argument before the referee, the plaintiff distinctly claimed a decree, 1. Declaring the mortgage paid and satisfied, or 2, If not so, ascertaining the amount remaining due, and decreeing satisfaction on payment thereof. It might well be, that in the absence of a specific prayer for leave to redeem, and in the absence of any thing occurring in the proceedings before the referee to induce him to suppose that the plaintiff sought the privilege of redemption, he might reasonably conclude that the plaintiff did not desire it, and so omit any provision for it in his judgment. But as the facts embraced in the pleadings, and proved on the trial, presented a fit case for such relief if desired; and as the claim for such relief was distinctly made at the close of the case, and was susceptible of being granted under the allegations in the pleadings and the proofs connected therewith, and under the clause for general relief, (*Ward* v. *Dewey,* 16 *N. Y. Rep.* 519; *Eno* v. *Woodworth,* 4 *Comst.* 253; *Marquat* v. *Marquat,* 2 *Kernan,* 336; *Emory* v. *Pease,* 20 *N. Y. Rep.* 62,) I am of opinion that the decree should have provided for it to the extent claimed; that is, that it should have declared (as did the referee's report) the amount remaining due upon the mortgage, and that upon payment thereof by the plaintiff, the mortgage should be canceled. The plaintiff, I understand, is satisfied to accept of such a decree, fixing the time of payment within a rea-

sonable time, (usually six months,) in analogy to the practice in cases of redemption. (2 *Barb. Ch. Pr.* 199, 630. *Quin* v. *Brittain, Hoff. Ch. R.* 353. *Waller* v. *Harris,* 7 *Paige,* 167. *Boquet* v. *Coburn,* 27 *Barb.* 230. *Bell* v. *Mayor, &c.* 10 *Paige,* 49.) And the defendant will not, of course, object to such a limitation of time. In thus modifying the judgment of the referee, I do not see that any injustice is done to the defendant, who has had a full opportunity to litigate with the plaintiff the amount remaining due on this mortgage. And after such means of litigation the amount thus ascertained to be due should be put in a shape (as it will be by such a modification of the decree) which will render it conclusive between the parties. It is suggested, indeed, on the part of the defendant, that by the decision of the referee the plaintiff's grantor and assignor has been permitted to testify to facts as to which he was incompetent to give evidence. But I do not think this suggestion should have any effect upon our decision. If the action of the referee was not satisfactory to the defendant, and by the evidence of Ephraim Beach the amount due upon the mortgage has been unjustly diminished, the practical remedy was to review his decision by an appeal on the part of the defendant, who was bound to anticipate the possible modification of the decree by a court of review on the appeal of the other party. It is also suggested that the evidence in the case justifies the conclusion that the plaintiff was not a bona fide purchaser of the land in question, and that upon that ground an absolute and unconditional decree dismissing the plaintiff's complaint was proper. The answer to this is, that the referee evidently decided that fact adversely to the defendant ; for, in the first place, he refused to nonsuit on that ground ; and in the second place, he reported that the plaintiff was the grantee of the land, and the assignee of the choses in action, which being unqualified must be construed to mean the bona fide assignee and grantee. And there is evidence to sustain his finding.

This is as far as it is necessary to go, in the disposition of this case. It is unnecessary to inquire whether the action was maintainable as being essentially a bill *quia timet.* And it is unnecessary to decide whether the state of the accounts between the parties would have justified a decree more favorable to the plaintiff. I am of opinion that, taking the case as presented to us, we must assume that the stating of the account between Ephraim Beach and Thomas B. Cooke (farther than ascertaining the amount due on the mortgage,) was waived or abandoned by the plaintiff. For, 1. The referee held that Ephraim Beach was an incompetent witness on that subject. 2. The plaintiff objected to evidence offered by the defendant bearing on that subject, "that the state of the accounts between Beach and Cooke is not involved in the cause as it now stands." 3. The referee expressly reports that such purpose of the action was abandoned by the plaintiff. This, as a fact stated by the referee as occurring in the proceedings in the cause, must, like any other fact of a like nature, as the fact of an examination of a witness, or the fact of an objection to testimony, be taken to be true. The remedy for it, if it be an error, is not by appeal, but by a resettlement of the case, and a correction of the error.

I am of opinion that the judgment appealed from should be so modified as to declare and adjudge that the sum of $1259,84, with interest from the 5th day of June, 1843, remains due and unpaid to the plaintiff upon the mortgage mentioned in the pleadings, and that upon payment thereof, together with the costs of the action as ordered by the referee, within six months after written notice of the entry of this decree, (unless in the meantime an action for the foreclosure thereof shall have been commenced or shall be in progress,) and then upon the payment of the costs of the suit in addition, unless the court in that action shall otherwise order, the plaintiff shall be permitted to redeem and pay the said mortgage ; and the defendant shall, upon re-

ceiving such payment execute, acknowledge and deliver a satisfaction thereof ; and that neither party shall have costs, as against the other, on this appeal.

[ALBANY GENERAL TERM, March 2, 1863. *Gould, Hogeboom* and *Miller,* Justices.]