Mr. Justice MacArthur
delivered the opinion of the court:
This is an order to show cause why a preliminary injunction should not be allowed prohibiting the board of public works from issuing certificates of indebtedness against the several lots of ground belonging to the complainants and others, fronting and abutting upon New York avenue, between Ninth and Fifteenth streets, in this city.
By the act of the legislative assembly, approved August 10, 1871, it is provided that whenever any improvements shall be completed, a statement of the cost thereof shall be made by the board and filed in their office, and an assessment based upon such statement shall be made and collected by said board in the same manner as other taxes are authorized to be collected; that if such assessment shall not be paid at the expiration of thirty days after notice, the board is authorized to issue interest-bearing certificates of indebtedness against the property assessed as aforesaid, which assessment and certificate shall be a lien upon said property.
The complainants set forth that they are the owners in severalty of lots of ground fronting and abutting upon New York avenue, between Ninth and Fifteenth streets west, and that other persons are also owners in like manner of lots upon said avenue, between said streets, on behalf of whom, as well as of themselves, this suit is brought. The complainant also shows that an assessment has been made by the board of *127 public works upon the several lots so owned by the plaintiff, based upon a statement of the cost of improving said avenue between the streets aforesaid; that plaintiffs have not paid said assessment, and that certificates of indebtedness have been prepared by the board and will be issued, and that it is the design of said board to negotiate the same and collect the proceeds thereof, and they say they are advised that the assessments and certificates being apparently valid upon their face, will operate to throw a cloud upon the titles of the plaintiffs.
There are several allegations respecting the illegality of the assessment, the most prominent being that there was no law authorizing the improvement as it was made, and no valid law authorizing the assessment by the board. The final prayer of the bill is for a decree setting aside such assessment ; but the present application is for a preliminary injunction to restrain the threatened action of the board as to issuing the certificates of indebtedness against the lots.
It is now a well-settled principle that courts of equity will not interfere by injunction to restrain the enforcement or collection of a tax upon a mere allegation that it is illegal or void. This rule, as applicable to taxation, is now so familiar and well-established as not to need the citation of authority, and it proceeds upon the ground that in all such cases the party injured has an adequate remedy at law. If the tax be unauthorized, or if the persons making the assessment proceed without authority of law, then most certainly there is an adequate remedy without the interposition of a court of equity. This doctrine is fully expounded by the Supreme Court in the case of Ewing vs. The City of Saint Louis, 5 Wallace, 412, where the syllabus reads as follows:
“ With the proceedings and determinations of inferior boards or tribunals of special jurisdiction courts of equity will not interfere, unless it should become necessary to prevent a multiplicity of suits or irreparable injury, or unless the proceeding sought to be annulled or corrected is valid upon its face, and the alleged invalidity consists in matters to be established by intrinsic evidence. In other cases the review and correction of the proceedings must be obtained by the writ of certiorari. Therefore, to a bill filed to enjoin *128 the enforcement of judgments rendered against the complainant by the mayor of Saint Louis for the amount of alleged, benefit to his property from the opening of a street in that city, and setting forth as grounds of relief want of authority in the mayor, and various defects and irregularities in the proceedings, a demurrer on the ground that a court of equity had no jurisdiction of the matter, and that the complainant had a plain, adequate, and complete remedy at law, was sustained.”
Nor do I understand the counsel on either side to controvert the general principle. In the much-cited case of Dow vs. The City of Chicago, 11 Wallace, 308, the Supreme Court again sustain and apply the same rule, but stating more clearly the equitable considerations which would justify an apparent departure from it. They say:
“Assuming the tax to be illegal and void, we do not think any ground is presented by the bill, justifying the interposition of a court of equity to enjoin its collection. The illegality of the tax and the threatened sale of the shares for its payment constitute of themselves alone no ground for such interposition. There must be some special circumstances attending a threatened injury of this kind, distinguishing it from a common trespass, and bringing the case-under some recognized head of equity jurisdiction before the preventive remedy of injunction can be invoked. * * * It must appear that the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury, or, where the property is real estate, throw a cloud .upon the title of the complainant, before the aid of a court of equity can be invoked. . In the cases where equity has interfered, in the absence of these cireumstances it will be found, upon examination', that'the question of. jurisdiction was not raised, or was waived.”'' -
- The limitations of the rulé which excludes the action of a court of equity in áll cases of tax proceedings áre here sufficiently explained. ' According' to which; the chancery , jurisdiction will only interpose when the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injiuy, or, where thé- property, is -real estate, throw a cloud upon the title of the plaintiffs. It is argued that the bill in *129 tliis case falls under two of these heads of equity, viz, that it prevents multiplicity of suits and also a threatened" cloud upon the title to real estate. Probably the averments of the bill in this respect would be sufficient to lay a foundation for equitable relief if they can be actually applied to the circumstances of this case.
The decisions which establish the doctrine that a court of equity will not enjoin the collection of taxes erroneously assessed, where”the injured party can have adequate redress at law, generally declare that a void tax is no tax, and therefore constitutes neither a lien nor a cloud upon the title to real estate. For example, in the case of Hayward vs. City of Buffalo, 14 N. Y., 537, the court of appeals say, “It is true that such an assessment and tax is a lien upon real estate, and as such has preference over prior mortgages and payments. * * * This, of course, means a legal assessment. But an assessment made by a board or body having no power to make it is a nullity and no lien upon property. It is claimed, however, that such an assessment is an apparent lien, and should be removed as a cloud, for the reason that it is invalid. But the power of municipal and other inferior officers or bodies to make assessments is in the law, and is as apparent as the act of assessment, and if the assessment is without authority it is not even an apparent lien. If, however, such an assessment is to be regarded as an apparent lien, it does not follow that it is a cloud within the cognizance of a court of equity.”
In that case the assessment was for the expenses of the purchase of a lot and the building of a school-house thereon, which were assessed by the board of assessors upon .the taxable property of the District, and, therefore, directly covers the question of a cloud upon title to real estate. This is the decision referred to by the Supreme Court of the United States in the case of Dow vs. City of Chicago, as stating correctly the grounds of equity jurisdiction. Indeed, the doctrine derived from a review of the various, authorities is, that a cloud upon title growing out of proceedings for the collection of taxes can only exist in such jare instances as wliere the irregularity complained of does not appear upon the face of the record, and where it can only be established by outside testi *130 mony. In Ward vs. Dewey, 16 N. Y., 519, the court remarked, “ When the claim appears valid upon the face of the record, and the defect can only be made to appear by extrinsic evidence, particularly if that evidence depends upon oral testimony, it presents a case for invoking the aid of a court of equity to remove it as a cloud upon the title.” We think this is the settled doctrine of the cases, and in accordance with it we hold that where an assessment is void upon the record there can be no cloud upon title within the equity powers of this court j and that it is only when the invalidity is to be proved by other meaus that chancery will interpose its preventive remedies.
In the case now before us, all the material facts are matters of record or matters of public law. Whether there was any law authorizing the improvement, or any valid law authorizing the assessment, are matters of record and are as public as the assessment itself. They would all come up upon a writ of certiorari. No extrinsic evidence would be required, and in fact none was needed on the argument of this motion.
I am aware that the billcon tains the following allegation: “And they are advised and charge that the said board being invested by said act of Congress with general power to make assessments, and by said act of the legislative assembly with general power to issue certificates of indebtedness, and the said certificates and assessments being apparently valid upon their face, as your orators aver they are, the said certificates issued under color of law will operate to throw a cloud upon the title of your orators.” But these averments cannot enlarge the operation of the statute which .confers a special power upon the board to issue certificates of indebtedness to defray the expense of special improvements only, nor can they alter the legal effect of an assessment not authorized by law, or confer jurisdiction on a court of chancery by a mere admission in order to remove a cloud upon title which can have no existence.
We are also asked to restrain an attempt to issue these certificates, for the reason that if the property upon which the assessment is made be sold for the non-payment thereof, as provided for in said act of assembly, the. deed would be conclusive evidence of title. The language of the act in this re *131 spect is as follows: “ Which deed shall be deemed and held to be a good and perfect title to any property bought at any sale hereby authorized.” It is contended that a tax-deed under this provision would be conclusive that all the requirements of the law had been complied with, and that in such case the complainants have no other remedy. Even if the deed had this effect, the complainants would have the right of certiorari, and of recovering back the amount of their assessment, if paid under protest. It has been repeatedly decided that the tax-payer is entitled to both of these remedies at law. But we are not inclined to adopt this construction of the statute. It is a familiar principle of law that a purchaser at a tax-sale must prove the regularity of the proceedings from the beginning to the time of the sale. He must prove that all the requirements of the law have been complied with ; and we are inclined to the opinion that the assembly only meant to declare the title perfect when the proceedings had been in accordance with the statute. In many of the States a tax-deed has been made presumptive evidence of regularity, thus changing the burden of proof from the claimant under such a deed to the owner of the land; but I am not aware that it has been made conclusive evidence of all the facts necessary in assessing or taxing lands anywhere. And certainly we ought to require clearer language than that employed in this statute to work a change so radical. Upon the whole we are of opinion that, upon the showing of the bill, we cannot interpose upon the ground of a threatened cloud upon title.
The jurisdiction of this court is also invoked on the ground of multiplicity of suits. There is undoubtedly such a ground of equitable relief, although it is somewhat difficult in application. One rule respecting it is, however, quite clear; and that- is, that it cannot be applied where the cause of action is perfect in each individual tax-payer. The reason for a suit being brought in the name of one or more in behalf of all is that where a large number of persons have a common interest in the subject-matter of litigation, a court of equity will administer relief, so as to prevent multiplied and useless litigation. Mr. Justice Story, in his Equity Pleadings, at sections 541, 542, 543, cites several instances of this kind. But if an *132 action to restrain proceedings for raising taxes can be maintained at all, then the canse of action is distinct and perfect in each separate lot-owner, and there is not the slightest danger of his being harassed by numerous suits, for his rights can be amply settled in one suit alone. This point has been the subject of express adjudication. In the case of Dodd vs. City of Hartford, 25 Conn., 232, a bill was filed in chancery by several tax-payers, in behalf of themselves and others, to restrain the collection of a tax for the construction of a sewer, on the ground that said tax was illegal and void. The court say:
“ The claim most pressed by the petitioners is, that the court ought to entertain jurisdiction in order to prevent multiplicity of suits. But no one of these petitioners has any interest in the suit which another of them may be called to institute; they cannot individually complain that others are compelled to sue, for they have no share in the expense or vexation of each other’s suits. The multiplicity of suits which the petition seeks to avoid does not affect injuriously any one of the petitioners. No one of them has occasion to expect any such multiplicity affecting himself; one suit is all that any one of them has to fear, and the object of this bill would seem to be to relieve these parties, severally, from that one suit, and to consolidate the apprehended litigation. In other words, to enforce a consolidation rule by means of the extraordinary powers of a court of chancery.”
In Sheldon et als. vs. Center School District, 25 Conn., 228, a bill in chancery was filed by thirty-nine tax-payers, asking an injunction against the collection of a tax, and the same question was decided in the same way.
The reports of the supreme court of Wisconsin contain two recent cases in which it is held that separate lot-owners cannot unite in an action to restrain the collection of taxes alleged to be illegally assessed upon lots owned by them in severalty, as each is entitled to his own suit. Barnes et al. vs. The City of Beloit, 19 Wis., 93; Hewcomb vs. Horton et al., 18 Wis., 566.
The case of Cutting et al. vs. Gilbert et al., 5 Blatchford, 259, has recently been frequently referred to in this court until it is familiar to us all. It was a bill in equity filed by *133 six firms of the city of New York, who were licensed and doing business as bankers and brokers under the internal-revenue act. One of the questions was whether they could unite in a bill of peace to enjoin the assessing and collecting of a tax with which they claimed they were not chargeable, according to the provisions of that act. Mr. Justice Nelson, who decided it, reasons at large upon this aspect of the case, and finally closes that part of it by observing, “ To allow them to be made parties to the suit would confound the established order of judicial proceedings, and lead to endless perplexity. and confusion. I am satisfied, therefore, that this bill cannot be sustained on account of the joinder of improper plaintiffs.”
In the case of Dow vs. City of Chicago, already mentioned, although the Supreme Court say that equity will interfere to prevent multiplicity of suits, yet, speaking of the plaintiff in that case, they declare, “ Nor would he have been compelled to resort to a multiplicity of suits to determine his rights. His entire claim might have been embraced in a single action.” It appears to me that these authorities and the reasons on which they are founded show conclusively that individual tax-payers whose property has been separately assessed have not that community of interest which will allow them to unite in a bill of complaint on the ground of preventing a multiplicity of suits, however illegal the assessment may be. But each must stand upon his own right and maintain his action according to the principles of the common law in his own name. It therefore becomes unnecessary to examine the decided cases that are supposed to be analogous, for they have no application to these lot-owners.
A court of equity will not interfere by injunction where the consequences which might ensue would be little less inju - rious than those to be prevented by this process.
It rests in the sound discretion of the court, and it will grantinjunction with the greatest reluctance to restrain a man in the exercise of his trade, or to stay the operations of manufacturing establishments or other private institutions of large business relations. In the leading cases where the attempt has been made to enjoin taxing-officers, the courts have declared that there are reasons of public justice and policy *134 why a court of chancery should not interfere to suspend the collection of public revenue, unless in exceptional cases. These declarations have nearly all been made in cases of special assessments, and are founded upon the necessity of a speedy collection of the taxes as the means of carrying on government. These considerations have deterred courts of equity from subjecting the collection of the public revenue to the hazard and delay of protracted chancery litigation ; to say the very least, there would certainly be greater danger in allowing injunctions under such circumstances than in refusing them, especially when the lot-owner has adequate remedy at law.
I have not considered this case with reference to the de-. murrer or answers, but simply upon the showing of the bill. Doubtless, the views already expressed would be decisive of the former. This is not a hearing, however, which can be followed by a judgment final. The order to be made is interlocutory. Nor have I examined the alleged legality or illegality of the assessment. But finding we have not jurisdiction of the action, the order to show cause must be dissolved and the injunction asked for denied.
Mr. Justice Wylie stated his opinion to be that—
There was an improper joinder of plaintiffs, and for that reason concurred in the ju dgment of the court; but he was also of opinion that upon the facts set forth in the bill of complaint it could be maintained by a separate lot-owner in his own name.
Mr. Justice Olin did not sit in the case.