WILLIAM A. GUEST, Appellant, *v.* THE CITY OF BROOK-
LYN et al., Impleaded, etc., Respondents.

An action in equity will not lie to review the proceedings of municipal
boards and officers, or to correct irregularities and errors which may have
been committed by them in laying out, opening or improving streets, or
in levying assessments and taxes therefor.

The equity powers of the court cannot be invoked to prevent an appre-
hended injury, save where its exercise is necessary to prevent a multi-
plicity of suits, or an irreparable injury to the freehold, or to remove a
cloud upon a title.

The fact that an assessment is divided into a number of installments
does not bring the case within the first exception, as a decision as to one
installment would be effective upon all.

The freehold is not injured, although it may be illegally assessed and
taxed.

To authorize the court to intervene to remove the lien of an assessment,
or to set aside an assessment sale as a cloud on title, it must appear that
the record or conveyance is not void upon its face, and that the claimant
under it would not develop the defects rendering it invalid by the proof
which he would be obliged to produce in proceedings to enforce his claim.

The court will not entertain jurisdiction upon the ground that document-
ary evidence in the custody of public officers will be mutilated or
destroyed.

Under the act of 1869, to correct certain taxes relating to the improvement
of Third street in the city of Brooklyn (chap. 383, Laws of 1869), an
apportionment was made against a lot belonging to plaintiff. One-
nineteenth was, by virtue of said act, assessed upon the premises in
1871, and added to the annual tax, and for the non-payment of the sum
the lot was sold and bid off by defendant M. This action was brought
to set aside the sale, to restrain the giving or receiving a deed, and to
have the assessment declared void because of alleged defects in the pro-
ceedings prior to the sale. M. did not appear, and judgment was taken
against him by default. *Held,* that the action was not maintainable
against the city ; that it did not come within either of the exceptions
above specified to the rule prohibiting an action to prevent an appre-
hended injury.

The system of assessing the expense of the opening or the improvement
. of a public street or avenue upon the owners of adjoining property
against their consent condemned as unjust and oppressive.

(Argued April 4, 1877 ; decided May 22, 1877.)

APPEAL from order of the General Term of the Supreme
Court in the second judicial department, reversing a judgment

in favor of plaintiff entered upon the report of a referee, and granting a new trial. (Mem. of decision below, 8 Hun, 97.)

This action was brought to set aside a sale of certain premises in the city of Brooklyn for non-payment of a tax, to have the tax declared illegal and void, to restrain the city corporation from giving a conveyance to defendant Mahoney, the purchaser on said sale, and to restrain said purchaser from giving notice of sale, and from claiming or accepting a conveyance.

The board of assessment of the city of Brooklyn, under and in pursuance of the act, chapter 383, Laws of 1869, ascertained and apportioned the cost of the improvement of Third street in said city; of said cost they apportioned upon a lot owned by plaintiff in said city the sum of $4,854.95, one-nineteenth of which ($267.11) was, in pursuance of said act, assessed upon the lot in 1871, and added to the annual tax for that year. The whole tax ($552.73) remaining unpaid, the lot was sold for non-payment July 1, 1873, and was bid off by defendant Mahoney. Various irregularities and defects were alleged in the assessment and collection, and the statutes relating to the improvement, including that of 1869, were alleged to be unconstitutional and void.

Among the other defects alleged, were these, that the apportionment was not filed in the office of the board of assessors, and copies thereof filed in the office of the clerk of the board of supervisors, and of the collector of taxes as required by the act of 1869; that the collector's warrant was defective in that it required the collector to pay over the tax to the county treasurer instead of to the city treasurer, as required by law; that prior to the sale, chapter 683, Laws of 1873 went into effect, which took the power to sell for unpaid taxes from the collector who made the sale and conferred it upon the registrar of arrears; that the tax-roll was not properly verified by the assessors so as to give the board of supervisors jurisdiction; also that one-half of plaintiff's lot which was assessed lay on Fourth street, and was outside of the prescribed district of assessment.

The referee decided that the apportionment and assessment were void, and directed judgment for plaintiff as demanded in the complaint. Defendant Mahoney did not appear in the action, and judgment was entered against him by default.

Further facts appear in the opinion.

*John J. Townsend,* for the appellant. Chapter 383, Laws of 1869, to correct the taxes of 1868 of the city of Brooklyn, so far as it relates to the cost of the improvement of Third street in said city, and for assessing and collecting the same, is unconstitutional, because it does not state the tax or its object, or the property to be affected, or the method of the assessment thereof. (Const. 1846, art. 10, § 13; Amendment of 1875, art. 3, § 20; *McCulloch* v. *State of Maryland,* 4 Wheat., 428; 2 Stubbs' Const. Hist., 166: *Prov. Bk.* v. *Billings,* 4 Pet., 562; *People* v. *Brooklyn,* 4 N. Y., 432; *Allen* v. *Drew,* 44 Vt., 174, 186; *Nichol* v. *Bridgeport,* 36 Conn., 255; *City of Peoria* v. *Kidder,* 26 Ill., 351; *Thomas* v. *Leland,* 24 Wend., 69; *People* v. *Suprs. Kings Co.,* 52 N. Y., 568; *Brewster* v. *City of Syracuse,* 19 id., 116; *Guilford* v. *Chenango,* 3 Kern., 173; *Howell* v. *City of Buffalo,* 37 N. Y., 267; *In re Van Antwerp,* 56 id., 261; *Litchfield* v. *Vernon,* 41 id., 125; *Darlington* v. *Mayor,* 31 id., 186; *People* v. *Flagg,* 46 id., 401.) It is unconstitutional, because it purports to delegate the taxing power. (*Darling* v. *Green,* 50 Ill., 424, 428; *Patten* v. *Green,* 13 Cal., 325, 330; *Salem T'pike and C. Bridge Co.* v. *County of Essex,* 100 Mass., 282; *In re Hancock St.,* 18 Pa. St., 26; *King* v. *Comr. of Sewers,* 7 East, 71; *Warren* v. *Dix,* 3 C. & P., 71.) The act was unconstitutional, because the delegated power of determining the incidence of tax could not be exercised by the board of assessors. (Laws 1860, chap. 488, § 13; Laws 1861, chap. 340, § 12; Laws 1868, chap. 314, § 7; *B'klyn Park Comrs.* v. *Armstrong,* 45 N. Y., 234, 246.) The law was void, because a nucleus or interior region is peremptorily taxed, irrespective of benefit, with so much of the cost as does not represent a benefit to an exterior, undefined region.

(Laws 1861, chap. 297, § 5; *Tide Water Co.* v. *Coster*, 18 N. Y. Ch., 518, 531; *Chicago v. Larned*, 34 Ill., 203; *Creote* v. *Chicago*, 56 id., 422; *Welier* v. *St. Paul*, 5 Minn., 95.) Chapter 471, Laws of 1860, was void, there having been no reading of it in its ultimate form in the assembly. (Const., art. 3, § 15; *Berry* v. *B. & D. P. R. R. Co.*, 41 Md., 446–462.) It was local, and embraced more than one subject. (*People ex rel. Pratt* v. *Common Council*, 13 Abb. Pr. [N. S.], 121; *People* v. *Hills*, 35 N. Y., 449; *People* v. *Raymond*, 37 id., 428, 431–37; *People* v. *Albertson*, 55 id., 50; *Astor* v. *Mayor*, 62 id., 567, 573, 575; *Purdy* v. *Marlborough*, 54 id., 279; *Bd. Park Comrs.* v. *Detroit*, 28 Mich., 228.) The law being void, all proceedings under it to condemn the lands are void. (*Striker* v. *Kelly*, 7 Hill, 9; *Harrington* v. *People*, 6 Barb., 607; *Aitken* v. *Kenna*, 20 Wend., 241–249; *Cunningham* v. *Carmody*, 17 N. Y., 276–281; *Eli* v. *Holton*, 15 id., 596.) The act of 1869 (chap. 383) did not ratify the former acts. (*Howell* v. *City of Buffalo*, 37 N. Y., 267; *In re Van Antwerp*, 56 id., 261; *People* v. *Williams*, 3 T. & C., 338; *Dean* v. *Borschenius*, 30 Wis., 237–243; *People* v. *Haines*, 49 N. Y., 591; *Butler* v. *Saginaw*, 26 Mich., 27; *U. S.* v. *Fisher*, 2 Cranch, 390.) A substantial compliance with all the measures preliminary to imposing the tax required by the statute was necessary. (*Westfall* v. *Preston*, 49 N. Y., 349, 353; *Clark* v. *Norton*, id., 243; *Jackson* v. *Shepard*, 7 Cow., 88; *Sharp* v. *Johnson*, 4 Hill, 76; *Van Rensselaer* v. *Whitbeck*, 7 N. Y., 517; *Whitney* v. *Thomas*, 23 id., 271; *Sibley* v. *Howard*, 3 Den., 72; *Carpenter* v. *Willett*, 1 Keyes, 510.) Defendants are estopped from saying that the court has not jurisdiction. (*Grandin* v. *Le Roy*, 2 Paige, 509; *Le Roy* v. *Platt*, 4 id., 77; *Cumming* v. *Mayor*, 11 id., 596; *Bk. of Utica* v. *Mersereau*, 3 Barb. Ch., 529; *Livingston* v. *Livingston*, 4 J. Ch., 287; *Clarke* v. *Sawyer*, 2 N. Y., 498; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 id., 30; *Davis* v. *Morris*, 36 id., 569; *McKeon* v. *Lee*, 4 Robt., 449.)

*John H. Knaebel*, for the respondents. The court has no jurisdiction. (*Marsh* v. *City of Brooklyn*, 59 N. Y., 280; *Washburn* v. *Burnham*, 63 id., 132; *Sanders* v. *Village of Yonkers*, id., 489.) Plaintiff is chargeable with extraordinary laches. (*Lane* v. *Shears*, 1 Wend., 433; *Hassenfrats* v. *Kelly*, 13 J. R., 466; *Requa* v. *City of Rochester*, 45 N. Y., 136; *Hums* v. *Mayor, etc.*, 47 id., 646.) He is estopped by his acquiescence in the improvement. (*Storrs* v. *Barker*, 6 Johns. Ch., 166; *Mayor of Pittsburgh* v. *Scott*, 1 Penn. St. R., 309; *Raw* v. *Potts*, 2 Prec. in Chan., 35; *Hobbs* v. *Morton*, 1 Vern., 136; *Hunsden* v. *Cheyney*, 2 id., 150; *East India Co.* v. *Vincent*, 2 Atk., 83; *Jackson* v. *Cator*, 5 Ves., 688; *Putnam* v. *Ritchie*, 6 Paige, 390; *Bright* v. *Story*, 1 Story C. C., 494; Story's Eq., §§ 388, 799 *a*, 1237, etc.; *Hellenkamp* v. *The City of Lafayette*, 30 Ind., 194; *Wendell* v. *Van Rensselaer*, Johns. Ch., 344; *Hanning* v. *Ferrers*, 1 Eq. Cas. Abr., 356, paragraph 10; *Palmer* v. *Stumph*, 29 Ind., 331.) Plaintiff's unwillingness to do equity debarred him from relief in a court of equity. (*Mickles* v. *Dillaye*, 17 N. Y., 80; *State R. R. Cases*, 2 Otto, 616, 617; *Bacon* v. *Cottrell*, 13 Minn., 194; *Green* v. *Dixon*, 9 Wis., 532; *Blair* v. *Chamblin*, 39 Ill., 521; *Benedict* v. *Gilman*, 4 Paige, 58; *Bright* v. *Boyd*, 1 Story, 478, 494–496; Story's Eq., § 799, *b* ; *Putnam* v. *Ritchie*, 6 Paige, 403, 404.) The statutes and proceedings prior to 1869 were valid. (*People ex rel.* v. *Havemeyer*, 4 T. & C., 365; *Darlington* v. *Mayor*, 31 N. Y., 186; *People* v. *Suprs., etc.*, 4 Seld., 317; *Sorchan* v. *City of Brooklyn*, 62 N. Y., *Astor* v. *Mayor*, 26 id., 567; *Coleman* v. *Shattuck*, 62 id., 358; *People* v. *Mayor*, 63 id., 296; *Brown* v. *Mayor*, 63 id., 239; *Har. G. L. Co.* v. *Mayor*, 33 id., 309.)

Church, Ch. J. The apportionment made by the assessors under the act of 1869, chapter 383, against the plaintiff's lot for the cost of widening and improvement of Third street, in the city of Brooklyn, was $4,854.95, one-nineteenth of which ($267.11) was, by virtue of said act, assessed upon

said lot in 1871, and added to the annual tax thereon of $284.89, making in all $552.73. The lot was sold for the non-payment of this sum on the 1st day of July, 1873, and the same was bid off by one Mahoney. This action is brought to set aside the sale and for a perpetual injunction restraining the giving or receiving a deed, and asking that, upon payment of the annual tax included in said sum of $552.73, the assessment be canceled and the apportionment declared void. Mahoney did not appear in the action, and judgment passed against him by default, so that, as to him, the sale is set aside, and no conveyance can be executed to him.

The referee decided that the apportionment and assessment were void, and ordered judgment for the plaintiff, which was reversed by the General Term. The learned counsel for the plaintiff, in an able and elaborate argument, has discussed the whole subject of taxation, and the power of the legislature over the same, and insists that all the acts of the legislature, from 1860 to 1869 inclusive, authorizing the improvement of Third street, and providing for the payment of the cost thereof, are unconstitutional and void, and that various irregularities have been committed under said acts which invalidate the assessment.

Whether a discussion and consideration of these various points are necessary to a proper disposition of this case depends upon the nature of the action and the legal principles which govern it.

An action in equity will not lie to review the proceedings of municipal boards and officers, or to correct irregularities and errors which may have been committed. The doctrine was distinctly laid down by Chancellor KENT in *Mooers* v. *Smedley* (6 Johns. Chy. R., 28). He said : "I cannot find by any statute or precedent or practice that it belongs to the jurisdiction of the Court of Chancery, as a court of equity, to review or control the determinations of the supervisors, but that the review and correction of all errors, mistakes and abuses in the exercise of the powers of subordinate public

jurisdictions, and in the official acts of public officers, belongs to the Supreme Court. That it has always been a matter of legal, and never a matter of equitable, cognizance," and that " in the whole history of the English Court of Chancery there is no instance of the assertion of such a jurisdiction as was there contended for." That was an action to review the levying of a tax assumed to be illegal for the purpose of paying bounties upon wolves. In *The Mayor* v. *Meserole* (26 Wend., 132), the late Court of Errors expressly affirmed the same principle in a case where it was sought to restrain proceedings for widening and laying out a street in the city of Brooklyn. NELSON, Ch. J., referring to the opinion in *Mooers* v. *Smedly* (*supra*), said : " My examinations have confirmed the truth and soundness of this conclusion," and adds, in respect to the claim for the exercise of such a jurisdiction, that it " is a doctrine that would at once bring under review of that court all that immense mass of proceedings in opening and widening streets and avenues in our cities and villages; in laying out public and private roads in our towns; and, in fine, the doings of every subordinate tribunal or public officer that might affect the title to real estate."

The plaintiff was not without legal remedy. An appeal to the Supreme Court was authorized by the act of 1869, and if that remedy was not exclusive, a common law certiorari might have been brought. It may be affirmed as a result of the authorities that there is no recognized head of equitable jurisdiction for reviewing directly the proceedings of subordinate tribunals and officers, in laying out, opening or improving streets and avenues, or in levying assessments and taxes therefor, nor to correct errors therein, or to modify or vacate assessments imposed. To establish such a jurisdiction would open the flood gates of premature litigation without substantial benefit to interested parties.

The action if maintainable at all must be based upon a right to invoke the power of the court to prevent an apprehended injury. In general the rule is that a party must wait until his rights have been actually interfered with

before he can implead another from whom he anticipates injury.

Courts have commonly occupation enough in determining controversies which have become practical, without spending time in hearing discussions respecting such as are merely speculative or potential, (14 N. Y., 13, per DENIO, J.)   There are recognized exceptions to this rule, but they are restricted within defined and established limits.   These exceptions are : 1. To prevent a multiplicity of actions.   2. To prevent irreparable injury to the freehold.   3. To remove a cloud from the title, (14 N. Y., 541).   The question is whether this case is within either of these exceptions.   It is manifest that it is not within the first two.   It does not appear that any other action will be prevented.   The action is by the plaintiff in his own right and for his own benefit, and it does not appear that any other person is affected, or desires to litigate the questions involved.   The fact that the assessment is divided into nineteen installments does not bring the case within this exception.   A decision as to one installment would be effective upon all.   The freehold is not injured, although it may be illegally assessed and sold for taxes.   The plaintiff may suffer but the freehold remains unimpaired.   (Story Eq. Jur., § 929.)

To bring a case within the third exception to authorize the court to intervene to remove the alleged lien or title as a cloud, it must appear that the instrument or record is not void upon its face, and that the claimant would not develop the defects rendering the assessment, conveyance or other instrument invalid by the proof which he would be obliged to produce.   In this case the plaintiff has already the benefit of a judgment against the purchaser, which, in effect, prevents him from enforcing any claim by virtue of the sale, but if all the proceedings, including the sale, remained unaffected they would not constitute a cloud upon the title within the adjudications.   *Scott* v. *Onderdonk* (14 N. Y., 9) was sustained upon the ground that under the act of 1834, p. 108, which constituted the charter of Brooklyn, the conveyance

was *prima facie* evidence of certain facts recited, relating to the assessment and preliminary proceedings which would require proof *aliunde* to overcome, and hence that such conveyance constituted an apparent title, and a cloud which the party had a right to ask a court of equity to remove, but this court, in *Rathbone* v. *Hooney* (58 N. Y., 468), held that the true construction of the act of 1854, chapter 384, in force when the proceedings took place, in respect to a corresponding provision (§ 33), was that the conveyance was *prima facie* evidence of the facts connected with the sale only, and not of the preliminary proceedings leading thereto. (See, also, *Marsh* v. *City of Brooklyn*, 59 N. Y., 281.) In this case FOLGER, J., stated the conditions entitling a party to invoke the aid of a court of equity to be : When the claim or lien appears to be valid on its face, and when the defect can only be made to appear by extrinsic evidence, which will not necessarily appear in proceedings by the claimant to enforce the lien. This rule has been often reiterated and enforced in this court. (14 N. Y., 9, 538; 38 id., 276; 39 id., 386; 63 id., 132.) Assuming, therefore, that the points urged by the learned counsel for the appellant show substantial defects sufficient to invalidate the apportionment and all subsequent proceedings, the plaintiff is in no danger of legal injury to his property. When attacked the proceedings must all be shown by the claimant, except those immediately connected with the sale, such as notice, etc., and I do not understand that any defect is alleged in respect to them. The certificate given on the sale shows that the sale was made by the collector, and if he had no power to sell, a reference to the statute would be sufficient. So, when the tax-roll was produced, the want of a verification would appear on the face of the instrument. It is suggested that this paper might be lost, and the roll might be admitted upon a presumption that it had been properly verified. Without considering whether such a presumption could be indulged in a case where a party was seeking to enforce a claim to real estate under statutory proceedings, it is quite certain that we must pre-

sume that the affidavit, with its unsigned *jurat*, will be preserved as long as the other parts of the roll.  We cannot entertain jurisdiction upon the ground that documentary evidence in the custody of public officers will be mutilated or destroyed.   So the fact that the assessment covered land on Fourth street, outside of the district of assessment, appears upon the face of the roll and other proceedings, and all the facts constituting alleged defects, certainly all of a substantial character will appear in the records and proceedings which a purchaser must produce to substantiate his claim.   If the position of the learned counsel, that all the statutes from 1860 to 1869, respecting the improvement of Third street, are unconstitutional and void, and especially if that can be affirmed of the act of 1869, the plaintiff is not in the slightest danger of ever being molested, either in his title or possession.

If the laws are invalid, the proceedings are all void.   We cannot, within established principles above referred to, properly determine these questions in this action.

Says DENIO, J., in *Scott* v. *Onderdonk* (*supra*): "The party whose estate is questioned may naturally wish to have the matter speedily determined, as he may in the meantime suffer inconveniences, and even actual damages, on account of the discredit attaching to his title by reason of the unfounded claim.   But, unless the circumstances are such as to sustain an action for slander of title, the law regards the injury too speculative to warrant its interference."

cate extravagance,
nd the proceedings
$5,000 upon the
the great burden
roperty owners for
xpense aggregating
eptional.   Similar
e during the demor-
statutes have been
have occurred.
le system of assess-

ments for local improvements, especially as authorized and practiced in New York and Brooklyn, is unjust and oppressive, unsound in principle and vicious in practice. The right to make a public street or avenue is based upon a public necessity, and the public should pay for it. Such an improvement is in no sense for private use or benefit, and it is difficult to find more reason for assessing the accidental owner of property situate in its vicinity, the amount of a mere incidental advantage supposed to be derived from the improvement, than for compensating him for an incidental injury, and all right to such compensation has been uniformly denied. When land is taken for the improvement, there is some propriety, when determining the amount of compensation, in regarding the advantages to the owner arising from the manner of its proposed public use, because it may be said that, in some sense, it goes to the question of damages for the injury actually committed. So the harsh features of the obnoxious principle underlying the system are mitigated, if not avoided, when the consent of the owners, or even a majority of them, is required to authorize the construction of the improvement. But, to force an expensive improvement upon a few property owners, against their consent, and compel them to pay the entire expense, under the delusive pretense of a corresponding specific benefit conferred upon their property, is a species of despotism that ought not to be perpetuated under a government which claims to protect property equally with life and liberty. Besides its manifest injustice, it deprives the citizen practically of the principal protection (aside from constitutional restraints) afforded in a free country against unjust taxation; the responsibility of the representative for his acts to his constituents. MARSHALL, Ch. J., in McCulloch v. State of Maryland (4 Wheat., 428), said: " The only security against the abuse of this power (the taxing power) is found in the structure of the government itself. In imposing a tax, the legislature acts upon its constituents. This is in general a sufficient security against erroneous and oppressive taxation."

STUDENT☐    OFFICER ☐    OTHER ☐

DO NOT WRITE IN THIS SPACE

SIGNATURE        TODAY'S DA

ADDRESS      PLEASE PRINT

CITY        TEL.

HARVARD LAW SCHOOL
LIBRARY

This is true to a degree, as it respects general taxation, when all are equally affected, but it has no beneficial application in preventing local taxation for public improvements. The majority of the constituents would generally approve, certainly not dissent from taxing the small minority.

The few are powerless against the legislative encroachments of the many. The "constituents," under this system, are attacked in detail, a few only selected at a time, and they have no power to enforce accountability, or to punish for a violation of duty on the part of the representative. The majority are never backward in consenting to, and even demanding, improvements which they may enjoy without expense to themselves. The inevitable consequence is, to induce improvements in advance of public necessity, to cause extravagant expenditures, fraudulent practices, and ruinous taxation. The system operates unequally and unjustly, and leads to oppression and confiscation. It is difficult to discover in it a single redeeming feature which ought to commend it to public favor. I make these observations to enable me to say more impressively, that the effective remedy is not with the judiciary. Whatever our individual views may be of the policy, we are obliged to maintain established rules of law, and to restrain our own power within prescribed limits, as well as to enforce restrictions upon other departments of government. We should regard a departure by the courts from rules of law wisely established for the protection of all, to meet the equities of a particular case or class of cases, as a far greater evil than that sought to be remedied. Courts can confine the legislature within constitutional authority; and, when the questions are legitimately up, can and do exact a strict compliance with all the requirements of law leading to a forcible taking of the property of the citizen, but, beyond this, they have no discretion, and are themselves bound to observe and enforce legislative provisions, whether they approve them or not. The only effective remedy is with the legislative department of the government, and it may possibly have been before applied but for the existence of

other more engrossing abuses affecting the whole people; but among the manifold evils complained of in municipal administration, there is no one, in my judgment, calling more loudly for reform than this arbitrary system of local assessments.

The order must be affirmed, and judgment absolute for defendant.

All concu

Order affirmed, and judgment accordingly.