ROME, WATERTOWN AND OGDENSBURGH RAILROAD COMPANY, Appellant, *v.* JAMES E. SMITH, Respondent.

SAME *v.* CARROLL PHIPPANY, Respondent.

*Assessors' oath — what defects in form will not invalidate the tax — power of the assessors to correct the oath after the time fixed by the statute — an injunction to restrain the collection of a tax only allowed in case of great necessity.*

This action was brought to restrain a tax collector from collecting a tax imposed upon the plaintiff's property in the year 1885, upon the ground that the oath of the assessors attached to the assessment roll was defective in that it was made in the form prescribed by section 8 of chapter 176 of 1851, instead of that prescribed by chapter 201 of 1885. The two forms were the same, except that the latter did not, as did the former, require the assessors to state that they had assessed the property at the value they would appraise it in payment of a just debt due from a solvent debtor, and that the words "full value" are used in the latter in place of the words "full and true value" in the former act.

*Held,* that as the oath contained all that was required by the act of 1885, its failure to strictly comply with the form therein prescribed did not invalidate the tax.

After the rolls had been completed and on August 28, 1885, the assessors took the oath prescribed by the act of 1851. On October 23, 1885, another oath to the same roll was taken by the assessors which conformed literally to the requirements of the act of 1885.

*Held,* that even if the first oath was irregular or wholly defective, the assessors had power to and did correct and supply the defect by taking the second one, the provisions of the statutes relating to the time at which the oath should be taken being directory and not requiring literal compliance therewith.

That a temporary injunction was properly refused upon the ground that it was not shown that irreparable damages would otherwise be sustained, or that the circumstances, showing the necessity for the injunction, existed.

APPEAL from an order denying a motion to continue an injunction and vacating the injunction previously granted.

*William B. Hornblower,* for the appellant.

*Edmund L. Pitts* and *John Cuneen,* for the respondent.

Daniels, J.:

The defendant is the tax collector of the town of Kendall, in the county of Orleans, and an injunction was issued against him to restrain the collection of a tax imposed upon the plaintiff's property in the year 1885. The collection of the tax was resisted by the

plaintiff as unlawful because of the alleged omission of the assessors to indorse or attach their oath to the assessment-roll in the form in which that was provided for by chapter 201 of the Laws of 1885. When the roll was completed, instead of making and attaching the oath in the form provided by this act, they made the oath in the form prescribed by section 8 of chapter 176 of the Laws of 1851. That act was passed to amend certain provisions of the Revised Statutes relating to the assessment and collection of taxes; and after the time fixed for the hearing of objections to their assessments by the assessors, and the determination of such objections and the completion of their roll, they were severally required to appear before any officer of their county authorized to administer oaths and severally to make and subscribe the oath prescribed by the statute.

This direction was so far complied with by the assessors that on the 28th of August, 1885, and after the completion of their roll, they appeared before a justice of the peace of the county and took the oath in the form prescribed by the act of 1851; and because of the oath being taken in that form and not under the act of 1885, their assessments, so far as they affect the property of the plaintiff, have been objected to as unlawfully imposed. But it by no means follows, from the fact that the assessors took the oath in the form provided by the act of 1851, that the assessment was on that account either void or irregular, for the oath prescribed by the act of 1885 is the same as that directed to be taken by the act of 1851, except that the assessors are not now required to state that they have assessed the property at the value they would appraise it in payment of a just debt due from a solvent debtor. That requirement has now been omitted, and the assessors are no longer directed to add to the statement that the property has been assessed at its full value, the additional phrase, "and true," as that was required by the act of 1851. But these changes in the oath required to be attached to the roll are of an unimportant character, for the duty resting upon the assessors is still the same to assess the property at the full value thereof, and to swear in the oath that the assessment has been made at this valuation. In this particular both the act of 1851 and that of 1885 are practically the same. For the assessors, by the former, have been required to swear that "we have estimated the value of the said real estate at the sums which a majority of

the assessors have decided to be the full and true value thereof."
While by the later act they are still required to swear that "we
have estimated the value of the said real estate at the sums which a
majority of the assessors have decided to be the full value thereof."
The duty imposed upon the assessors is the same in each of the
acts. The assessment required to be made must be according to
their estimate or determination the full value of the property,
and the oath in each instance has been prescribed to authenticate
the performance of that duty. And adding to the oath the further
statement that the assessment is also of the "true value," and made
at an amount at which the assessors would appraise the property in
payment of a just debt due from a solvent debtor, in no manner
either diminished or enlarged the duties or acts of the assessors.
The latter phraseology which is contained alone in the act of 1851
was used as an equivalent of the full and true value of the
property. And that it was so understood by the legislature and
intended to be acted upon in that manner by the assessors, is
very evident from the language in which the act of 1851 was
enacted. For care was taken by it in the first instance to require
the assessors to estimate the value at the full and true value of the
property. And the further requirement was apparently added to
secure the intelligent observance of that obligation, for it was
another appeal directly to the conscience of the assessors themselves
requiring them to swear, in addition to the fact that their assessment
of the property was of the full and true value, that they would
also appraise the property at the same value to pay a just debt due
from a solvent debtor. That this additional requirement was under-
stood by the legislature as only the equivalent of the other branch
of the oath is further evident from the act of 1885 omitting this
particular phrase. For the same duty is still enjoined upon the
assessors, to estimate the property included in the assessment-roll at
the full value thereof. And no more, nor less' than that, was
enjoined upon them by the act of 1851. In taking the oath,
therefore, prescribed by the act of 1851, the assessors swore to all
that was required of them in the act of 1885, and, in addition
thereto, that the valuation was the "true value" of the property,
and that they would appraise it at the same sum in payment of a just
debt due from a solvent debtor. They did all that the act of 1885

had directed they should do, and then made these additional statements to their oaths, showing still more clearly that they had discharged the duties required to be performed by them by the act of 1885 in a more particular manner than that act had directed it to be done. By the addition no change whatever was made in the assessments, or the basis upon which the valuations were adopted, but the roll and its verification still remained a compliance with all that the act of 1885 had directed.

. But if any doubt could be entertained upon this subject, it would be removed by the oath taken by the same assessors and indorsed upon the same roll on the 23d of October, 1885. For that oath was taken in the form as it was literally given by the act of 1885. And the fact that the assessors had previously made and indorsed the oath in the form mentioned in the act of 1851, did not prevent them from making this further oath, and in that manner literally complying with the act of 1885. The roll was still subject to the control of the assessors. It had not passed under the action of the board of supervisors, and was evidently recalled from the hands of the supervisor of the town, if it were in fact in his possession, to add to it the oath last taken by the assessors. And as the act of 1885 does not direct that the oath shall be indorsed and taken at any specified date, the assessors still possessed this authority. What the law has directed is that the oath of the assessors shall be taken after they have completed their roll, without mentioning any period within which that shall be done. And as this roll was still subject to their authority, a reasonable construction of the act of 1885 will sanction what they did in the way of indorsing and making the oath in the form prescribed by this act. Even if the preceding oath had been irregular, or wholly defective, the assessors had the authority to correct it or supply its defects, and comply with the act of 1885, at the time when the last oath was taken by them. Upon this subject the statutes directing the performance of official duty, even where a time for that purpose may have been stated, are not in all cases to be literally carried into effect. For where the act contains no negative provision, and time does not appear to have been deemed essential, and the duty relates to the interests of the public, it may be performed even after the time in which the law may have directed that it shall

be done. In other words, the time mentioned in the statute will in these cases be considered to be not mandatory, but directory. (*Parish* v. *Golden*, 35 N. Y., 462.) And this rule has been applied to the assessment of taxes. In *Rawson* v. *Van Riper* (1 T. & C., 370), the statute required the school trustee to make the assessment for a tax voted for, within thirty days after the votes had been taken. The trustee failed to comply with this direction, but the assessment was afterwards made, and it was sustained by the court upon the construction that the statute, as to time, was to be held to be directory. A point of the like description arose in *Witheril* v. *Mosher* (9 Hun, 412), and the same conclusion was adopted and acted upon by the court

In no view, therefore, was the plaintiff entitled to an injunction to restrain the collector in the collection of this tax under his warrant. The proceedings of the assessors were entirely regular, so far as they have now been drawn in question; and the order from which the appeal has been taken should be affirmed, with the usual costs and disbursements.

In the case of the same plaintiff against Carroll Phippany, who is the collector of the town of Yates, in the same county, the facts are substantially the same as those in the preceding case. The first oath was taken by the assessors on the 25th of August, 1885, and the second, in the literal form required by the act of 1885, on the twenty-third of October of that year. There was accordingly the same compliance with the law as there was in the other case, and the order likewise in this should also be affirmed, with the same costs and disbursements.

DAVIS, P. J.:

While I concur in the views expressed by my brother DANIELS, touching the validity and sufficiency of both of the oaths taken by the assessors and annexed to the respective assessment-rolls, and in the opinion that if the first was in any respect illegal or irregular all error was cured by the making of the second oath, which was a literal compliance with the requirement of the act of 1885, yet I think prominence should also be given to the grounds upon which the continuance of the injunctions were denied by the court at Special Term. Those grounds were expressed in the opinion of the court below, as follows :

VAN BRUNT, J.— The ordinary rule is that an injunction will not issue to restrain the collection of a tax, unless some irreparable injury will ensue. The plaintiff in this action has failed to show that any irreparable injury will ensue if the defendants are not enjoined. They have already availed themselves of the statute of 1880 to review this assessment, assigning the same errors which form a basis of the action. They have chosen the remedy for the redress of whatever wrongs they have suffered and they should be held to heir election. If they are compelled to pay this tax and it should finally be adjudged under proceedings now pending to be erroneous, ample means of restitution are provided by the statute. There seems to be no valid reasons why these officers should be dragged from the western part of this State, where the defendants live and the plaintiffs carry on their business, to answer these proceedings.

It has long been the established rule of the courts of equity of this State, that no injunction shall issue to restrain the collection of taxes except under circumstances of great necessity to prevent irreparable damage. (*Mutual Benefit Life-Ins. Co.* v. *Supervisors of New York*, 3 Keyes, 182 ; *Heywood* v. *City of Buffalo*, 14 N. Y., 534 ; *Howell* v. *City of Buffalo*, 2 Abb. Ct. App. Dec., 412 ; *Mutual Benefit Life Ins. Co.* v. *Supervisors of New York*, 20 How. Pr., 416 ; *Pacific Mail Steamship Co.* v. *The Mayor*, 57 id., 515 ; *Bouton* v. *City of Brooklyn*, 15 Barb., 375 ; *Betts* v. *City of Williamsburgh*, 15 id., 255 ; *Guest* v. *City of Brooklyn*, 69 N. Y., 506 ; *Western R. R. Co.* v. *Nolan*, 48 id., 513 ; *Messech* v. *The Board of Supervisors*, 50 Barb., 190.) Public policy requires that the collection of the taxes adjudged by the proper authorities to be necessary for the maintenance of the local and State governments, should not be prevented or interfered with by injunction suits in equity to test the legality of assessments when there is any other possible redress. In this case other legal redress exists and proceedings have been instituted to enforce it. The fact that cars in transitu may be levied upon, does not show a case of irreparable injury, because it is obviously in the power of the railroad company to prevent any such injury by placing money or other property sufficient to pay the tax where it may be levied upon by the collector without subjecting itself to any interference with its trains.

The justice at Special Term was right therefore in placing the

decision on the ground that no case was shown for an injunction, and in condemning the obtaining of an injunction in the courts of this city against the collectors of distant towns of the State.

BRADY, J., concurred.

In each case order affirmed, with ten dollars costs and disbursements.