JOHN FLOOD, Respondent, *v.* HENRY VAN WORMER, as Commissioner of Highways of the Town of Rotterdam, Schenectady County, N. Y., Appellant.

*Equity — removal of an alleged encroachment upon a highway by the commissioner, enjoined.*

The rule in equity, that before the equitable powers of the court can be invoked and a party can enjoin another from any anticipated injury, he must wait until his rights have been actually interfered with, is subject to the following exceptions :

*First,* where the proceedings in the subordinate tribunal will necessarily lead to a multiplicity of actions ;

*Second,* where they lead in their execution to the causing of irreparable injury to the freehold ;

*Third,* where the claim of the adverse party to the land is valid upon the face of the instrument or proceedings sought to be set aside and extrinsic facts are necessary to be proved in order to establish its invalidity or illegality.

In an action brought to restrain a commissioner of highways from proceeding to remove the plaintiff's house as an alleged encroachment upon a highway, it appeared that the commissioner had notified the plaintiff in writing to move the house, and accompanied such notice with an order signed by the commissioner, establishing the encroachment, and ordering the removal of the same from the highway.

It further appeared that the order was of itself *prima facie* evidence of the right of the commissioner to remove the obstruction, and that it would require some evidence on the part of the plaintiff to defend himself and his possession from the operation of that order. It did not appear, however, that the commissioner had removed or in any way attempted to remove the plaintiff's house, or interfered with or damaged it, except by service of the notice and order above mentioned, although the complaint alleged that the plaintiff feared and had reason to believe that the commissioner would remove his house in pursuance of such order under the statute without any legal proceeding to determine the question whether or not the house encroached upon the highway.

*Held,* that, the evidence showing that the house was not an encroachment upon the highway, the commissioner was properly enjoined from enforcing, by the removal thereof, the order which had been made by him ;

That, while if an action were brought by a commissioner to recover the penalty prescribed for a violation of the order, the party charged with the encroachment could interpose the common-law defense and thus try the question of the alleged encroachment; yet, if the commissioner saw fit to adopt the other method designated in the statute of summarily removing the encroachment, the party charged therewith would be remediless, except as he might obtain redress in an action for trespass, which would offer inadequate relief against the injury which might be inflicted in the demolition or removal of the house;

That the order of the commissioner being *prima facie* evidence of his right to remove the obstruction, and being a matter of record in the office of the town clerk, and constructive notice to all persons, as far as the highway in question was concerned, of the existence of the alleged encroachment, it would operate as a cloud upon the plaintiff's title, which equity alone would have the power to remove. (Per MAYHAM, J.)

APPEAL by the defendant, Henry Van Wormer, as commissioner of highways of the town of Rotterdam, Schenectady county, New York, from a judgment of the Supreme Court, entered in the clerk's office of the county of Schenectady on the 28th day of July, 1892, in favor of the plaintiff, adjudging that the house of the plaintiff does not encroach upon the highway mentioned in the complaint, and enjoining the defendant and his successors in office perpetually from removing or interfering with said house, and awarding costs to the plaintiff, after a trial at the Schenectady Circuit before the court, without a jury.

*Daniel Naylon, Jr.*, and *Alonzo P. Strong*, for the appellant.

*Lewis Cass* and *Jacob H. Clute*, for the respondent.

MAYHAM, P. J.:

This is an appeal from a judgment entered upon the report of Hon. Charles O. Tappan, as referee, in an action in equity to restrain the defendant, as commissioner of highways, from proceeding to remove plaintiff's house, which it was alleged encroached upon the public highway, and which he was about to remove as an alleged encroachment.

The defendant, at the time of the commencement of the action, was, and for sometime previous thereto had been, the sole acting commissioner of highways of the town of Rotterdam, Schenectady county. The plaintiff, since the 29th day of July, 1887, had been the owner in fee of the lands described in the plaintiff's complaint,

and in the fall of 1887 erected a house on said premises, which has ever since remained thereon.

On the 13th day of July, 1891, the defendant, acting as sole commissioner of highways, assuming in good faith to believe that the plaintiff's house encroached upon the public highway in his town, served or caused to be served upon the plaintiff a notice and order of which the following is a copy :

" *To John Flood :*

" Take notice, that an order has been duly made by the commissioner of highways of the town of Rotterdam, a copy of which is hereby inclosed and is part of this notice, and that you are required according to the statute in such case made and provided, to remove the building or house therein mentioned in said order within sixty days of the service of this notice upon you.

" Dated *July* 13*th*, 1891.

" HENRY VAN WORMER,

" *Commissioner of Highways of the Town of Rotterdam.*"

To this notice was attached the following order :

" I, the undersigned, sole commissioner of highways of the town of Rotterdam in the county of Schenectady, N. Y., having ascertained that the public highway in said town known as the Schenectady and Duanesburgh plankroad, leading by and in front of the premises of John Flood in said town, is encroached upon the northerly side thereof by the frame house the property of the said John Flood, the extent of which encroachment is as follows, viz. : The southerly side or front of the said house is in on the said highway to the following extent : All that piece of land south of a straight line passing through a point in the easterly side of said house eight and nine-tenths $(8\frac{9}{10})$ feet north of the southeasterly corner of said house, westerly, and a point in the westerly side of said house two and two-tenths $(2\frac{2}{10})$ feet north of the southwesterly corner of said house is a part of the said highway.

" This encroachment is arrived at by a survey which I have caused to be made of said highway, which survey shows that the northerly bounds and limits of said highway runs through the said building herein referred to, and along the said straight line herein

described, and that all that piece of land which lies under the said building south of the northerly bounds of said highway or straight line herein described, is a part of the public highway aforesaid.

"It is therefore hereby ordered by the said commissioner of highways of said town that the said building or house be removed so that the highway be opened, unobstructed, and free from encroachments, and of the breadth which was originally intended, which was three (3) rods, as appears by the description of said highway on record in the town clerk's office in the town of Rotterdam and the Schenectady county clerk's office.

"Dated *July 13th,* 1891.

"HENRY VAN WORMER,
"*Commissioner.*"

"I have also caused stakes to be driven along the northerly bounds or limits of said highway along the encroachment herein referred to, which stakes if connected in the order in which driven by a straight line marks the northerly bound or limit of said highway.

"HENRY VAN WORMER,
"*Commissioner.*"

The evidence discloses that after the service of this notice and before the commencement of this action, the plaintiff had an interview with the defendant in which he asked the defendant if he intended to remove the plaintiff's house when the sixty days were up, to which the defendant replied: "First I will collect the twenty-five dollars ($25) fine and then I will go on and move it." The evidence also shows that the defendant has not removed or in any way attempted to remove the plaintiff's said house, or in any way interfered with or damaged the plaintiff's house or premises, except by service of the above notice and copy order.

The complaint alleges that the plaintiff feared and had reason to believe that the defendant would remove his house in pursuance of said order under the statute without any legal proceeding to determine the question whether or not he at the time of said notice encroached upon the highway. The highway in question had been in existence and use as a highway for many years before 1849 as a public road, leading from Schenectady westerly to Duanesburgh, but there is no evidence that it had ever been laid out or recorded

as a public highway otherwise than by the records of the laying out of the Schenectady and Duanesburgh plankroad, nor does it appear what the width of said highway was before said plankroad was laid out, except along said plaintiff's premises it had been divided by fences on either side of the same for more than forty years.

The plankroad which occupied and adopted portions of the highway in question, was constructed by a corporation duly formed and incorporated on the 4th of June, 1849, under and in pursuance of chapter 210 of the Laws of 1847, under the corporate name or title of "The Schenectady and Duanesburgh Plankroad Company," for the construction of a plankroad from the city of Schenectady to the valley of the Schoharie creek or a point in the division line of Schoharie and Schenectady counties.

The evidence also showed that the plankroad company on the 21st of February, 1849, applied to the board of supervisors of the county of Schenectady for authority to take the necessary land for the purpose of the construction of its road, in which application the route of the proposed road was described as in the article of association filed by the company, and upon such application the board of supervisors made an order of which the following is a copy:

"The said company having produced the necessary evidence that the notice required by said act had been duly given to authorize them to present such application, the said application having been heard and duly considered by this board, and they being of opinion that the public interest will be promoted by the construction of the road on the route proposed and described in said application, do unanimously grant the said application. Therefore, it is hereby ordered that the said Schenectady and Duanesburgh Plankroad Company be and they are hereby authorized to construct such road upon the route specified in said application and to take the real estate necessary to be used for that purpose; and

"It is further ordered that the clerk of the board furnish the said corporation with a copy of this order, certified by him, for the purpose of being recorded."

The board of supervisors also appointed three disinterested persons to lay out said plankroad.

The evidence shows that said commissioners proceeded pursuant to the authority conferred upon them by the board of supervisors,

and caused a survey and description to be made of the route of the plankroad so laid out by them and of the lands to be taken by the company for the construction of said road, and the actual survey made by the commissioners and filed pursuant to law was, as far as it related to the location of the plankroad over and along the land of the plaintiff, put in evidence on this trial; but the learned referee finds that it did not appear upon the trial of this action that the course and distance of the center line of said road are correctly and accurately given in said order and survey.

The case shows and the referee finds that the lands of which the plaintiff's premises are now a part abutted upon that part of the route of the plankroad, as laid out by said order and survey, described in the seventeenth course of said survey, and appears to have been south forty-six degrees west as the compass bearings then were, and the length of the course about seventeen chains.

The evidence discloses that the plankroad company entered upon and took possession of the land in said survey about the year 1849 or 1850, and built a plankroad on the same. The case does not disclose that any compensation was paid to the owner of these lands, which now belong to the plaintiff, by the plankroad company.

About the year 1857 or 1858 the plankroad and franchise were sold under a mortgage foreclosure and the purchaser under such foreclosure continued to occupy the same as a plankroad for a few months thereafter. He then abandoned all of said road, except the easterly end of two miles, which extended along the premises in controversy. The two miles not abandoned were continued to be occupied as a plankroad by different owners and occupants down to about the close of the year 1889, when the two miles were also abandoned, and that portion of the plankroad has since been used as a public highway in connection with the road previously abandoned.

The proof shows and the referee finds, that there has been no material change of the position of the location of the traveled part of the road along the premises in question from the time it was first used as a highway, or during the time it was used as a plank-road, down to the present time.

The proof also shows and the referee finds, that when the plank-road was first built, and from that time down to about the year

1887, there was along the north side, and extending from the toll house easterly to a point on the east line of the plaintiff's premises, a bank of earth and sand varying in height from ten to fourteen feet above the grade of the plankroad, and that upon the top of this bank, and running easterly in a straight line and parallel to the traveled part of the road, was a fence extending from the toll house to a point east of the east line of plaintiff's premises; such fence, so long as it existed and so far as it extended, was, and its line now is, the northerly boundary of that part of said road or highway as such boundary is, and was fixed and located by the practical location of the fence of such northerly line or boundary.

The referee also finds, upon what appears to be sufficient proof, that the plaintiff's house is not within the bounds of said highway as defined by said fence.

At the time the defendant made the survey upon which it is alleged the encroachment was established, the planks of the old plankroad remained in position as they were when said plankroad was constructed, and the southerly ends of these planks were thirty-two feet distant from the plaintiff's house, and the northerly ends of said planks were twenty-four feet distant therefrom, and the fence on the southerly side of said highway, opposite plaintiff's house, has remained substantially the same as when said order was made and in the same location which it now is for more than forty years.

Upon these facts the referee finds, as conclusions of law, that this road was a public highway before the plankroad was laid out or constructed, and that after that it continued such highway, subject to the control of the plankroad company, and that the control of the commissioners of highways was in subordination to the rights acquired by that company; that the surveying and laying out of the plankroad on the line of the highway did not make it a surveyed or recorded highway, but it remained a highway only to the extent that it had been used and occupied for that purpose, and that the use of its line by the plankroad was a part of the evidence of user, competent and material upon the question of the location and extent of the highway; that as the highway had never been laid out, surveyed and recorded as such, it became a highway only to the extent of the public user, and as the plaintiff's house did not stand within the limits of the highway, so used by the

public as such, it was not an encroachment upon the highway as claimed in the notice and order of the commissioner, and any removal of the same by the commissioner would be a wrongful invasion of the plaintiff's premises, and that the notice and order above recited, with the statement made by the defendant to the plaintiff, that he would first collect the fine and then remove the house, was a threat to do the plaintiff's property an irreparable injury, for which the plaintiff would have no adequate remedy at law and for which an injunction would lie.

We think the holding of the referee, that this house did not encroach upon the highway, is clearly sustained by the evidence. The plaintiff did not comply with the terms of the notice or order of the commissioner, and took no steps to remove the house as required therein, and the commissioner, at the time of the commencement of this action, had not commenced an action to recover the penalty, nor had he taken any steps, except by the service of the notice and order, to remove the house as an alleged encroachment upon the highway.

The principal question, therefore, on this appeal is whether an equitable action for an injunction will lie under the circumstances of this case.

The general rule to be observed by parties in invoking the equitable powers of the court, is that they must wait until their rights have been actually interfered with before they can enjoin another from whom they anticipate injury. (*Guest* v. *The City of Brooklyn et al.*, 69 N. Y. 512.)

To this rule, however, there are certain recognized exceptions:

"*First.* Where the proceedings in the subordinate tribunal will necessarily lead to a multiplicity of actions.

"*Second.* Where they lead in their execution to the commission of irreparable injury to the freehold.

"*Third.* Where the claim of the adverse party to the land is valid upon the face of the instrument or proceedings sought to be set aside and extrinsic facts are necessary to be proved in order to establish the invalidity or illegality." (*Haywood* v. *The City of Buffalo*, 14 N. Y. 541.)

We think this case comes clearly within at least two of these exceptions. The notice and order served by the commissioner were

under section 105 of chapter 568 of the Laws of 1890, which reads
as follows:

"Section 105. *How removed, and liability for not removing.*
The commissioners of highways shall serve upon the owner or
occupant of lands adjoining that part of a highway within their
town in which any obstruction or encroachment may exist, a notice
specifying the extent and location of such obstruction or encroach-
ment, and directing such owner or occupant to remove the same
within a specified time, not more than sixty days after the service
of the notice."

"If such owner or occupant shall neglect or refuse to remove
such obstruction or encroachment within such time he shall for-
feit to the town the sum of twenty-five dollars, and the commis-
sioners may remove such obstructions or encroachments at the expense
of the town, which may be recovered by action of such owner or
occupant, or the said commissioners may bring an action in any court
of competent jurisdiction to compel such owner or occupant to
remove such obstruction or encroachment. Actions by commis-
sioners of highways, as in this section provided, shall be in the name
of the town."

It will be seen by a perusal of this section, that the commissioner
determines in the first instance whether or not an encroachment
exists upon the highway, and upon such determination, serves the
required notice and order. The consequence of the disobedience of
such an order subjects the person charged with the encroachment
to the hazard of being prosecuted for the penalty, or of having the
commissioner, without further notice, remove the encroachment, or
of being prosecuted in an action in equity to compel this removal.

It is probably true that in an action for the penalty, which is an
action at law, the party charged with the encroachment could inter-
pose a common-law defense, and thus try the question of the alleged
encroachment; but if the commissioner saw fit to adopt the other
method provided for in this section, and to summarily remove the
encroachment, as he may do under this section, the party would be
remediless, except such remedy as might be afforded in an action
for trespass.

Such a remedy would not be an adequate one and afford ade-
quate relief against the injury which might be inflicted in the dem-

olition or removal of the plaintiff's house. As this section affords no opportunity to arrest or prevent the destruction of the plaintiff's property by the commissioner, no opportunity exists to try the legal rights of the parties, or the truth of the charge of encroachment, until the prosecution and possibly effectual remedy of an action of trespass at law. We are clearly of the opinion that, against such innovation of the rights of the citizen, the court of equity may, in a proper case, and we think in this, interpose by injunction ; nor can the plaintiff be compelled to wait and seek his remedy in a court of equity after the injury has been actually inflicted. The *prima facie* rights of the commissioner to remove, being established by his order, under this section it would require some evidence on the part of the plaintiff to show that that right was improperly exercised in this case, and that the house which was charged to be an encroachment was not located within the bounds of the public highway.

This would bring the case within the third exception referred to in *Haywood* v. *Buffalo* (*supra*).

"Where the claim of the adverse party to the land is valid upon the face of the instrument, or the proceedings sought to be set aside, and extrinsic facts are necessary to be proved in order to establish the invalidity or illegality."

There is another equitable principle which would seem to authorize the maintenance of this action for the protection of the plaintiff. As we have seen, the order is *prima facie* evidence of the rights of the commissioner to remove the obstruction, and that it would require some evidence on the part of the plaintiff to defend himself and his possession from the operation of that order. That being so, the order being a matter of record in the office of the town clerk, and constructive notice to all as far as this highway is concerned, of its extent and of this alleged encroachment, the order would operate, it seems to us, as a cloud upon the plaintiff's title which equity alone would have the power to remove. (*Scott* v. *Onderdonk*, 14 N. Y. 9 ; *Haywood* v. *Buffalo, supra ; Ward* v. *Dewey*, 16 N. Y. 519 ; *Hatch* v. *City of Buffalo*, 38 id. 276 ; *Allen* v. *City of Buffalo*, 39 id. 386 ; *Crooke* v. *Andrews*, 40 id. 549 ; *Newell* v. *Wheeler*, 48 id. 486.)

We are, therefore, clearly of the opinion that for the reason, and

within the authorities stated, this case is one proper for the equitable cognizance of this court.

We think, therefore, the decision of the learned referee in this action was correct, and that the judgment must be affirmed.

I have entertained doubts as to whether the action can be maintained on the conditional threat of defendant to remove plaintiff's building after he had collected the penalty of twenty-five dollars.

But I conclude that the very existence of the order declaring plaintiff's house an encroachment on the highway constituted a threat justifying the action. If the house was an encroachment the duty devolved on defendant to remove it, and he could at any time, without a moment's warning, proceed to do so.

Without considering the question as to whether the order constitutes a cloud on the title, I think there should be an affirmance of the judgment.

